UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| CURTIS HARRIS, # 218238, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:05-cv-722 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| LIEUTENANT KOWALSKI, et al., ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendants. ) | |
| ) | |

This is a civil action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate at the Standish Maximum Correctional Facility located in Standish, Michigan. Plaintiff filed his complaint on October 20, 2005, naming three state employees at the Oaks Correctional Facility located in Manistee, Michigan, as defendants: (1) Lieutenant Kowalski; (2) Sergeant Norton; and (3) Chrisina Froelich, R.N.[1] Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs on December 28, 2003, in violation of plaintiff's Eighth Amendment rights under the Cruel and Unusual Punishments Clause by allowing plaintiff to experience second hand exposure to a chemical agent used against a disruptive prisoner. Plaintiff's complaint seeks an award of monetary damages against defendants in their individual capacities and declaratory and injunctive relief. The matter is before the court on cross-motions for summary

---

[1] Nurse Froelich changed her last name to Forrest after her marriage. The name Froelich will be utilized herein because Froelich is the name plaintiff used in his complaint.

judgment. (docket #'s 13, 21). This matter has been referred to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth herein, I recommend that plaintiff's motion for summary judgment be denied, that defendants' motion for summary judgment be granted, and that judgment be entered in defendants' favor on all plaintiff's claims.

## **Applicable Standards**

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005); *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005). "'[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Bowling Irrevocable Trust*, 410 F.3d at 309 (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 2930 (2005)).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Tucker v. Union of Needletrades Indus. & Textile Workers*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations. Instead, the nonmoving party must present evidence to defeat a properly

supported motion for summary judgment. The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). As shown above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **Facts**

The following facts are beyond genuine issue. On December 28, 2003, plaintiff was an inmate at the Oaks Correctional Facility. Plaintiff was housed in "5 Block" in cell 5-104. On the morning of December 28, 2003, Prisoner McCormack in cell 5-124 was creating a loud disturbance. McCormack had slipped out of his restraints, smashed his cell's window, and was behaving in an incorrigible manner. Prison guards were eventually able to apply restraints through the broken window in McCormack's cell and escort McCormack to the housing unit's shower area. McCormack then refused to be searched for the dangerous contraband such as broken glass that McCormack may have secreted during the destruction of his cell. Lieutenant Kowalski was the shift commander. It was Kowalski's task to inform Prisoner McCormack of his opportunity to comply with orders before chemical agents would be utilized to compel McCormack's compliance. Housing unit staff contacted Nurse Froelich regarding whether Prisoner McCormack's medical records indicated that use of chemical agents posed any unusual health risk for this inmate. Nurse Froelich's response indicated that chemical agents could be utilized against Prisoner McCormack. A short time thereafter, housing unit staff inquired of Nurse Froelich whether there were other prisoners in housing unit that should be considered as unusual health risks if chemical agents were utilized against McCormack. It is not uncommon for other prisoners housed in the general area of a disruptive prisoner's cell to claim that they have medical conditions requiring that they be moved

when use of a chemical agent will likely be necessary to obtain compliance by the disruptive prisoner.

Among the objective indicators that use of chemical agents is imminent are closing the shutters on prisoners' cell windows and closing the unit's air handlers to prevent the chemical from circulating within the unit. After chemical agents are dispersed, the unit's ventilation system is set to purge the chemical agents from the area. Nurse Froelich's review of the health care records showed that the only prisoner in the housing unit with a Special Accommodation Notice[2] identifying him as a significant health care risk for exposure to chemical agents was Prisoner May in cell 5-110. Guards escorted Prisoner May from his cell to a yard module before chemical agents were used against Prisoner McCormack.

Plaintiff states that as Lieutenant Kowalski was in the process of closing the shutter on plaintiff's cell window, plaintiff told Kowalski that he had asthma, demanded that he be moved, and showed Kowalski two inhalers. Lieutenant Kowalski purportedly responded by stating, "Yeah, yeah yeah," and closed plaintiff's cell's window shutter. (Plf. Declaration at 3, ¶ 4, docket # 26). Lieutenant Kowalski's affidavit disputes plaintiff's assertions, but for purposes of addressing the defendants' motion for summary judgment, plaintiff's version is taken as true.

Prisoner McCormack's incorrigible behavior eventually compelled guards to use the chemical agents. Sergeant Norton was the officer who administered the chemical agents against Prisoner McCormack.[3] Plaintiff claims that Norton was among the guards he "called out to"

---

[2] Michigan Department of Corrections Policy Directive 04.06.160 (docket # 22, Ex. D) specifies both the purpose and requirements for issuance of a Special Accommodation Notice.

[3] Plaintiff did not file a verified complaint, but plaintiff's allegation that his cell was located "four cells away from" the shower area where McCormack was held does not appear to be disputed.

regarding his condition, but guards told plaintiff to "quiet down." (Plf. Declaration at 3, ¶ 4, docket # 26). Plaintiff criticizes Sergeant Norton for her use of chemical agents in an "unprofessional manner" because plaintiff believes that she used too much against Prisoner McCormack. (docket # 26 at 3, ¶ 4).

Approximately 12-to-15 minutes after the chemical agents were used against Prisoner McCormack, and in response to plaintiff's persistent complaints, prison guards began escorting plaintiff from his cell to a prison yard module. Nurse Froelich arrived in Housing Unit # 5 shortly after chemical agents had been utilized. While Froelich was assessing Prisoner McCormack's medical condition, she noted a prisoner being escorted across the housing unit's "base" area. When this prisoner saw the Nurse Froelich, he fell to his knees, and nearly knocked down one of his escorting officers. Plaintiff states that while he was being escorted to the prison's yard he "went semi-conscious" (Plf. Declaration at 4, ¶ 5, docket # 26), fell forward, and that a non-party guard escorting plaintiff fell on top of him. Nurse Froelich heard plaintiff yelling loudly and for an extended period. Plaintiff was yelling that he was an asthmatic, and that he should have been removed from the housing unit by guards before the use of chemical agents. Minutes later, after Nurse Froelich had finished attending to Prisoner McCormack's medical needs, Froelich went to the prison yard area to assess plaintiff's condition. Plaintiff was yelling continuously. He showed no signs or symptoms of an asthma attack. When plaintiff eventually stopped yelling, his respirations were even and unlabored. Nurse Froelich never observed plaintiff "in any sort of respiratory distress."

---

(Complaint at 4, docket # 1).

Plaintiff states that he suffered head and back injuries when he fell while being escorted from his cell to the prison's yard. He also states that in June 2004, months after the December 28, 2003 incident, he suffered a "brain aneurysm." (Plf. Declaration at 4-5, ¶¶ 5,11, docket # 26). Plaintiff appears to attribute his purported brain injury to a fall while being escorted. (*Id.* at 5, ¶ 11). Plaintiff has not submitted any medical records that he suffered any injury on December 28, 2003, or attributing any injury occurring on or about June 2004 to plaintiff's second-hand exposure to chemical agents on December 28, 2003.[4] Plaintiff filed his complaint on October 20, 2005.[5]

---

[4] Plaintiff submitted a two-page Adult Patient Profile form dated June 9, 2004. This form does not reflect any medical diagnosis, but merely records a patient history provided by plaintiff. (docket # 14, Ex. 2).

[5] "Rule 56(e) provides that when affidavits are used to support or oppose a summary judgment motion, they 'shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. These requirements are mandatory." 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY K. KANE, 10 B FEDERAL PRACTICE & PROCEDURE § 2738 at 328 (3d ed. 1998). Before 1976 an affidavit that merely purported to have been made under penalty of perjury was inadmissible. The affidavit also had to be sworn before an authorized officer. "Since 1976, affidavits no longer need to be notarized and will be admissible if they are made under penalties of perjury; only unsworn affidavits will be rejected." *Id.* at 363; *see Demars v. O'Flynn*, 287 F. Supp. 2d 230, 242 (W.D.N.Y. 2003). The "affidavits" of Prisoners Butler, Brozoro and May that plaintiff attached to his complaint and the briefs in opposition to defendants' motion for summary judgment and in support of his own are not submitted under penalty of perjury. These documents do not satisfy the statutory requirements to be considered unsworn declarations under penalty of perjury. 28 U.S.C. § 1746. The documents may not be considered by the court in ruling on the cross-motions for summary judgment. *See Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).

**Discussion**

A.    **Injunctive and Declaratory Relief**

Plaintiff's claims for injunctive and declaratory relief have been rendered moot by his transfer to a different prison. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995); *see also Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003), *cert. denied*, 125 S. Ct. 248 (2004). Accordingly, I recommend that plaintiff's claims for injunctive and declaratory relief be dismissed as moot.

B.    **Deliberate Indifference**

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of plaintiff's rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment. The authority controlling prisoner medical treatment claims is *Estelle v. Gamble*, 429 U.S. 97 (1976). In that case, the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976); *see Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must

establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on the either component of his claims against the defendants.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 389 F.3d 868, 874 (6th Cir. 2005); *see Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). The mere presence of a serious medical is insufficient to establish the objective component. The plaintiff must make "an 'objective' showing that the deprivation was 'sufficiently serious' or that the result of the defendant's denial was sufficiently serious." *Hudson*, 508 U.S. at 8; *see Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

Plaintiff falls far short of satisfying the objective component. Plaintiff did not submit any medical records indicating that he has ever been diagnosed with asthma. It is undisputed that

Health Care Services had not issued a Special Accommodation Notice advising prison guards that plaintiff suffered from any conditions requiring that plaintiff be moved before the use of chemical agents anywhere in plaintiff's general vicinity. Plaintiff's second-hand exposure, if any, was of relatively brief duration. Within minutes of plaintiff's voicing complaints that he was suffering an adverse reaction, plaintiff was removed from his cell and escorted to a prison yard module. He was medically evaluated by a nurse and she determined that he did not display any objective signs of an asthma attack or any other form of respiratory distress. Plaintiff has not presented evidence that any defendant caused an objectively serious deprivation. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006); *Jarriett v. Wilson*, 162 F. App'x 394, 402-03 (6th Cir. 2005). No reasonable trier of fact could find in plaintiff's favor on the objective component of his Eighth Amendment claims against defendants.

The second prong under Estelle requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the requirements of the subjective component of a deliberate indifference claim:

> The subjective component, by contrast, requires a showing that the prison official possessed "a sufficiently culpable state of mind in denying medical care." [*Blackmore*, 390 F.3d at 895] (quoting *Farmer,* 511 U.S. at 834, 114 S. Ct. 1970). Deliberate indifference requires a degree of culpability greater than mere negligence, but less than "acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835, 114 S. Ct. 1970. The prison official's state of mind must evince "deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th

> Cir.1994). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Id.* Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838, 114 S. Ct. 1970.

*Miller*, 408 F.3d at 813. Plaintiff has not presented evidence any excessive risk to his health or safety disregarded by the defendants. The defendant officers checked the medical records, which indicated that plaintiff did not require any special accommodation. The officers were not required to believe plaintiff's claims that he had to be moved for medical reasons before chemical agents were used against Prisoner McCormack. A contrary rule would obviously be untenable. Guards would be forced to move every prisoner who wanted to be moved before actually dealing with the incorrigible prisoner creating the underlying disturbance. Nurse Froelich provided plaintiff with immediate medical attention. Plaintiff has not presented evidence on which a reasonable jury could find in his favor on the subjective component of his Eighth Amendment claims against defendants. I recommend that defendants' motion for summary judgment be granted.

## C. Qualified Immunity

Alternatively, defendants seek judgment in their favor on plaintiff's claims for monetary damages on the basis of qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The standard to be applied in deciding a claim of qualified immunity is one of objective reasonableness. *Id.* The question whether qualified immunity attaches to an official's actions is a

purely legal issue for the court. *See Fisher v. Harden*, 398 F.3d 837, 841 (6th Cir.), *cert. denied*, 126 S. Ct. 828 (2005); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence. The initial inquiry must be whether the plaintiff has alleged and supported with evidence[6] facts showing that the defendants' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *see Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006)("Whether a constitutional violation occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right, there is no need for further analysis."); *accord Caudill v. Hollan*, 431 F.3d 900, 908 n.5 (6th Cir. 2005)("[D]istrict courts . . . may not assume a constitutional violation or skip to qualified immunity, even when qualified immunity analysis seems conclusive."). Plaintiff did not satisfy the threshold constitutional violation requirement for the reasons previously stated.

Assuming *arguendo* that plaintiff had satisfied the initial requirement, plaintiff would nonetheless fall short of showing that the right plaintiff claims each defendant violated was "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his or her behavior violated that right. 533 U.S. at 201. The

---

[6]The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004).

Supreme Court's recent decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of the requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein*, 440 F.3d at 316. "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005)(quoting *Brosseau*, 543 U.S. at 199). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001). "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002). Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[7] in light of pre-existing law, the unlawfulness must be apparent. *See Wilson v.*

---

[7]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at

*Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569. "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Armstrong*, 432 F.3d at 699 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). The court must focus on whether, at the time defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every-like situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key* 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

Lieutenant Kowalski and Sergeant Norton were engaged in the prison's response to the significant disturbance created by Prisoner McCormick. Nurse Froelich checked the relevant records, found that plaintiff did not have any medically-based Special Accommodation Notice, and

---

572.

she advised guards that plaintiff did not have any medical condition sufficient to warrant his removal from his cell before the use of a chemical agent against Prisoner McCormack. The Supreme Court and the Sixth Circuit have never held that the use of chemical agents is a *per se* violation of the Eighth Amendment. *See Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992). Here, plaintiff's exposure, if any, was secondary and relatively brief. There is and was no constitutionally recognized right against second-hand exposure to a chemical agent, nor any guaranteed right to transfer to another area of the prison before its use. *See Gargan v. Gabriel*, 50 F. App'x 920, 924 (10th Cir. 2002); *Reeves v. Sweet*, 1:04-cv-605, 2005 WL 2417659 (W.D. Mich. Sept. 30, 2005); *Harris v. Livermore*, 2:03-cv-271 (W.D. Mich. Feb. 9, 2005); *Eccleston v. Oregon*, No. 03-6148-K1, 2004 WL 2538304, at * 4 (D. Ore. Nov. 9, 2004); *Bonnin v. Eau Claire County*, No. 03-C-65-C, 2004 WL 67478, at *4 (W.D. Wis. Jan. 13, 2004); *Koon v. Dyson*, No. C/A 8:01-3398-22RRY, 2004 WL 3217870, at * 4-5 (D. S.C. Sept. 30, 2004); *Jones v. Shoy*, No. Civ. A. L-02-3079, 2003 WL 23350219, at * 2 (D. Md. May 6, 2003), *aff'd*, 68 F. App'x 516 (4th Cir. 2003). I find that defendants are entitled to judgment in their favor as a matter of law on the alternative basis of qualified immunity.

## Recommended Disposition

For the foregoing reasons, I recommend that plaintiff's motion for summary judgment be denied, that defendants' motion for summary judgment be granted, and that judgment be entered in defendants' favor on all of plaintiff's claims.

Dated: April 27, 2006                                  /s/  Joseph G. Scoville
                                                       United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).